GENEVIEVE G. BODELSEN

*v.*

JOHN L. SWENSEN.

*Opinion filed December 16, 1903:*

APPEALS AND ERRORS—*error in findings of fact in chancery case must be palpable to reverse.* The chancellor's findings of fact from conflicting oral testimony must be upheld, on appeal, unless manifestly against the weight of evidence.

APPEAL from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

The bill in this case was filed June 24, 1902, by appellee, John L. Swensen, against Genevieve G. Bodelsen and Olaf H. Ahlgren, to set aside two certain deeds to property therein described, said deeds being executed, respectively, the 13th and 16th of September, 1901, there being three different pieces of property, known as the "Lake View," "south side" and "west side" properties. The bill alleged, among other things, that appellee was delirious, and unconscious of what he was doing, at the time of making the deeds; that there was no consideration to support the instruments, and that their execution was induced by fraud, misrepresentation, etc. Appellant and Olaf H. Ahlgren both interposed sworn answers. The original answer of Genevieve G. Bodelsen, among other things, declared that the deeds were made for the purpose of enabling her to raise money on said property

to pay the interest due on mortgages given to secure
notes for money raised on said property and for money
to pay taxes then due and unpaid on the said property.
Subsequently an amended answer was filed, in which she
claimed to be the owner of the property by virtue of said
deeds.

The undisputed facts are, that on and prior to Sep-
tember 13, 1901, John L. Swensen was the owner in fee
of a house, barn and two lots on Roscoe street, in Chi-
cago, known as the "Lake View property;" a house and
lot on LaSalle street, described as the "south side prop-
erty," and an undivided one-fourth interest in four houses
and lots on the west side of Chicago, known as the "west
side property," the latter interest being subject to the
life estate of Catherine Swensen therein. The Lake View
and the south side properties were encumbered, respect-
ively, for $2500 and $1000, and the value of the former
was variously estimated by the witnesses at from $6500
to $10,000, while the value of the last named piece was
placed at from $1600 to $3500. The west side property
was unencumbered, and the value of appellee's interest
therein is alleged in the bill of complaint to be $3000.
Appellee was receiving as rental from the Lake View
property, in September, 1901, the sum of $28 per month,
while the south side property yielded a monthly rental
of $26. One of the flats in the Lake View property was
occupied by Henry Bodelsen, father of appellant; Ebba
Bodelsen, her mother, and appellee. Ebba Bodelsen is
the daughter of appellee, Swensen, and appellant is his
grand-daughter. In consideration of the use and occu-
pancy of such flat the Bodelsen family supplied appellee
with his meals and took care of the room which he occu-
pied. The only other property owned by appellee was
a few articles of household furniture used in common by
the members of the household. This arrangement had
continued from the time of the death of appellee's wife,
four years prior to September, 1901. In the summer of

1901 appellee became sick and so remained until October, 1901, when he began to improve. On the 13th of September, 1901, a deed of the Lake View and south side properties was made by appellee to appellant. Three days later another deed was obtained, purporting to convey to appellant the west side property. By the terms of the latter deed a life estate in the property therein described was reserved to appellee. At that time the west side property was in the possession of Catherine Swensen, a life tenant under the will of John Swensen, deceased. In the first deed the consideration is recited as "$100 and other good and valuable consideration," while in the second deed it is stated to be "one dollar and other good and valuable consideration." No money was paid to the grantor by the grantee in consideration of said deeds. After the making of said deeds Genevieve G. Bodelsen, the grantee therein, conveyed the south side property to her cousin, Olaf H. Ahlgren, one of the defendants, and received in consideration therefor the sum of $400, which deed was dated October 15, 1901. At the time of making the deeds appellant was without property or income, engaged in no business, and was being supported by her father, Henry Bodelsen, who was in receipt of a salary of $75 per month. Appellee, who is seventy years of age, is the grandfather of appellant. As consideration for the deeds appellant claimed an agreement for the support of appellee, entered into between appellee and Henry Bodelsen, the father of appellant, of which agreement appellant had no notice or knowledge until after the execution, delivery and acceptance of the deeds and to which she has never become a party. In October, 1901, appellee denied the existence or validity of the deeds by demanding the right to collect and receive the rents arising from the property, which demand was refused. Appellee then filed the present bill.

A trial was had before the court, resulting in the dismissal of the bill against the defendant Ahlgren and

the south side property, being the property conveyed to Ahlgren by appellant, and the setting aside of the deeds to the Lake View and west side properties.

F. M. WILLIAMS, for appellant.

VOCKE & HEALY, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

The contention of appellant is, that the evidence does not warrant the finding of the circuit court and does not sustain the decree rendered. The evidence was heard by the chancellor in open court and was in many respects contradictory and irreconcilable. As to the mental condition of the grantor at the time of the execution of the deeds in question, thirteen witnesses testified,—six in behalf of the appellee and seven in behalf of the appellant. Those testifying in behalf of appellee, besides himself, seem to be entirely without any special or pecuniary interest in the matter, while those testifying in behalf of appellant, with but possibly one or two exceptions, occupied positions that might, at least, tend to render them susceptible of bias.

The scriveners who drew and acknowledged the deeds testified that they believed that at the time of the execution of the deeds the grantor understood the nature of the act or they would not have taken the acknowledgment. However, Claud B. Davis, by whom the first deed was prepared and acknowledged, testified that he prepared the deed at his office, at the request of Mr. Bodelsen, father of appellant; that at the time the deed was signed by appellee he was very much run down,—was thin and haggard and seemed to be very weak physically; that he had not seen appellee for some three, four or five weeks prior to that time, and when he saw him on that day he was very much surprised to see his physical condition. Witness further stated that at the time of the

signing of the deed the grantor was very nervous; that some one got a sheet of paper and grantor tried to write his name on it; that he was so nervous he would write a part of it and then go clear off; that he did not seem to be able to write legibly at all; that in these various attempts he did not go further than the first name and the rest would be a scrawl; that his pen would fly off the line and he would decide he was too nervous to write, and the deed was finally signed by mark. The deed of September 16 was drawn and acknowledged by L. D. Condee, and was also signed by mark. This witness testified that he thought appellee a very sick man; that his mind seemed to be strong enough, but his body seemed to be in a pretty bad shape.

Henry Davis, witness to the first deed, testified that appellee was, at the time of signing the deed, sick and feeble, and in response to the question of whether witness believed, on the occasion of the signing of the deed, there was any question as to the grantor's mental ability to execute the instrument, witness replied that such a possibility never entered his mind, and that he went over there as a friend, and thought he was favoring Capt. Swensen, the appellee. Witness further stated that at the time it was very hard for appellee to write, and after making several attempts he finally said he could not do it, and made his mark.

Ebba Bodelsen, appellant's mother, another witness on behalf of defendant, testified, in response to the inquiry of whether she thought appellee was, during the period from June, 1901, to October, 1901, of sound and disposing mind and memory, that "he did not seem to care very much how things went."

The testimony introduced by appellee, taken as a whole, was to the effect that in July and August, 1901, appellee was treated for gastritis and rheumatism, at which times, and in October, 1901, he was in a dazed condition of mind, not recognizing persons whom he met;

that he had albumen in the urine, and re-absorption would act, so as to paralyze the nerve centers, and the mind was affected in the way of coma or paralysis; that at and about the time in controversy appellee did not know or recognize persons with whom he was well acquainted, when he met them; that at and prior to such times appellee was very sick and feeble, and some of the witnesses declared him to be of unsound mind. Appellee testified that he was very sick for a period of three months during the fall and summer of 1901; that much of that time he was out of his mind; that he did not remember of signing the deeds in question; that he first learned about the deeds when he began to get well, in October, 1901, when he protested at not receiving the rent. This suit was commenced in June, 1902.

On the question of consideration there is no evidence of any money being actually paid, and the evidence as to the alleged agreement for support and care of appellee by appellant is contradictory and unsatisfactory. Appellee was about seventy years of age, and surrounded by persons, at the time of making the deeds, whose interest in the present controversy makes them adverse and hostile to him now.

We deem it unnecessary to make further comment upon the evidence in this case. Enough has been said to clearly show, as we think, that the decree rendered by the chancellor below was not manifestly against the weight of the evidence, and unless it was, we would be departing from a long and well established rule should we now disturb the finding of the trial judge who had before him the witnesses; and the means and conditions for judging as to the proper weight to be given to the testimony of the various witnesses was much more favorable than is the inspection of a record. As was said in *Elmstedt* v. *Nicholson*, 186 Ill. 580: "The chancellor saw and heard the witnesses, knows their manner of testifying while on the stand, and is better qualified than we to judge of the

weight to be given to their testimony. In chancery cases, where the evidence is conflicting and heard in open court, the error in finding as to fact should be clear and palpable to authorize a reversal." And again, as was said in *Fabrice* v. *Von der Brelie*, 190 Ill. 460: "It is contended that the evidence does not warrant the finding of the circuit court and does not sustain the decree rendered. The evidence was heard by the chancellor in open court and was conflicting in many particulars. In such case, to authorize us to reverse as to a finding of fact the error must be clear and palpable."

In this case the facts found by the trial court we think reasonable deductions from the evidence offered, and the testimony fully sustains the decree, which is now affirmed.

<div align="right">

*Decree affirmed.*